# IN THE COURT OF APPEALS OF IOWA

No. 20-0439
Filed April 29, 2020

**IN THE INTEREST OF L.S.,**
**Minor Child,**

**K.R.G., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Scott Strait, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Daniel J. McGinn of McGinn, Springer & Noethe, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Patricia Scheinost, Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

This mother has a long history of methamphetamine abuse. She has lost custody of four of her other children, all of whom tested positive for methamphetamine at birth. The mother has entered substance-abuse treatment on multiple occasions, all of which have been followed by relapse. The child in interest tested positive for methamphetamine when born in Nebraska in August 2018. The mother admitted to using the substance four days before giving birth. Nebraska child services initiated a safety plan and placed the child with the paternal grandparents in Iowa.[1]

In September, the mother entered inpatient substance-abuse treatment in Iowa. The State applied for formal temporary removal and petitioned for a child-in-need-of-assistance adjudication shortly thereafter. The juvenile court entered an order for temporary removal and formally placed the child in the custody of the paternal grandparents under the supervision of the Iowa Department of Human Services (DHS). In mid-October, the parties agreed the child could be returned to the mother's care in treatment, and an order was entered to that effect. Later that month, the child was adjudicated as in need of assistance.

By February 2019, the mother had completed inpatient treatment, entered a sober-living residence, and continued to meaningfully engage in services. In March, however, the mother was asked to leave her residence after testing positive for alcohol, after which she delivered the child to the paternal grandparents and did not return. In the following weeks, the mother admitted to using

---

[1] The paternal grandparents are the parents of the child's legal father. The legal father is not the child's biological father. The child's biological father is unknown.

methamphetamine on several occasions since leaving her residence. The State sought and obtained an order for temporary removal, which was confirmed following a removal hearing.

Thereafter, the mother largely discontinued participating in services. She wholly declined to participate in substance-abuse-related services, and she was a no show for each of the eleven requested drug screenings from March through July. In May, the mother only attended two of six offered visitations. As a result, the frequency of her visits was reduced. In June, she attended one of four offered visitations. At the visit she did attend in June, the mother advised the social worker she knew the matter was proceeding toward termination and she had no desire to get clean, noting, "I like to get high and I don't want to stop." The worker suggested the mother enter inpatient treatment to assist her in dealing with her addiction. The mother responded, "I am an addict, I know how to get it wherever I am." Also in June, the mother was arrested in Georgia on drug charges—possession of methamphetamine and marijuana. The mother likewise only attended one visit in each July and August. The mother arrived late and did not provide the necessities for caring for the child at each of the visits she attended in May through July.

In early August, DHS recommended the permanency goal be modified to termination of parental rights. Following a permanency hearing, the court agreed. In September, the mother reinitiated inpatient treatment. She tested positive for methamphetamine during intake. At the termination hearing, the DHS worker testified admissions staff at the inpatient treatment facility asked the DHS worker if the child could be placed with the mother in treatment within fourteen days. The DHS worker responded to the admissions staff that the mother would need to

complete the first thirty days of treatment before the child could be placed with her. The mother testified she merely requested visitations with the child but the social worker declined the request and stated her intention to proceed with termination. The DHS worker acknowledged the mother requested visits but testified she both advised the mother to contact the paternal grandmother to set up visits and contacted family safety, risk, and permanency (FSRP) services about setting up visits. Ultimately, the mother left treatment after only two days. The FSRP provider testified the social worker advised her to start visits after the mother progressed in treatment. When the FSRP provider reached out to the inpatient treatment facility regarding setting up visitations, she was advised the mother had already left treatment. The mother testified she left treatment because she "gave up hope" because the DHS worker "wasn't on board with reunification." The FSRP worker's documents show the mother contacted her on September 25, advised she had entered treatment, and requested to meet with her. The worker scheduled a meeting for September 29. By that point in time, the mother had left treatment. The records also show the FSRP and DHS workers attempted to meet with the mother in October, but the mother did not show up.

The State petitioned for termination of the mother's rights in October. A termination hearing was held in January 2020. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(e), (h), and (*l*) (2019). The mother appeals.[2]

---

[2] The parental rights of the child's legal father and any unknown biological father were also terminated. No father appeals. While the juvenile court terminated the rights of the legal father, we note that when it was confirmed through testing that he was not the child's biological father he was no longer a necessary party and

Our review is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

First, the mother vaguely challenges the sufficiency of the evidence supporting termination under paragraphs (h) and (*l*) of Iowa Code section 232.116(1). We could affirm based upon the mother's failure to challenge the sufficiency of evidence under paragraph (e). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *In re R.L.*, No. 19-1355, 2019 WL 5067181, at *1 (Iowa Ct. App. Oct. 9, 2019); *In re D.R.*, No. 18-1116, 2018 WL 4361087, at *1 (Iowa Ct. App. Sept. 12, 2018); *In re S.F.*, No. 15-0490, 2015 WL 3626439, at *1 (Iowa Ct. App. June 10, 2015); *In re D.H.*, No. 13-1693, 2014 WL 250256, at *1 (Iowa Ct. App. Jan. 23, 2014). Either way, as to termination under section 232.116(1)(h), the mother only challenges the State's establishment of the final element of that provision—that the child could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). Upon our de novo review of the record, we find the evidence clear and convincing that the child could not be returned to the mother. As to termination under paragraph (*l*) the mother only appears to challenge that she "has a severe

---

should have been dismissed from the proceedings. *See In re J.C.*, 857 N.W.2d 495, 505 (Iowa 2014).

substance-related disorder." Iowa Code § 232.116(*l*)(2). The mother agreed in her testimony at trial that she has a severe substance-abuse issue. We likewise find the evidence sufficient under paragraph (*l*).

To the extent the mother challenges the court's findings relative to Iowa Code section 232.116(2) and (3), concerning the child's best interests and statutory exceptions to termination, we agree with the juvenile court that termination is in the child's best interests and no exception should be applied to preclude termination.

Finally, the mother argues she "was not given adequate time and opportunity to reunify with the child." She largely alleges that, in September 2019, she was advised by DHS that she could not have any more visits with the child and her parental rights would be terminated, which caused her to "give up." We interpret the mother's arguments as a reasonable-efforts challenge and request for an extension of time to work toward reunification. As to the reasonable-efforts challenge, raising the issue of the adequacy of visitation at the time of the termination hearing was too late to preserve the claim for appellate review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). As to the request for an extension, given the mother's track record and lack of participation in services in the several months leading up to the termination hearing, we are unable to conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Lastly, the mother seems to argue that, following the termination hearing, the court should have adjudicated the child as in need of assistance and entered an order pursuant to Iowa Code section 232.100 suspending judgment and

continuing the proceedings. *See id.* § 232.117(5). Because we find "the facts sufficient to sustain the petition have been established by clear and convincing evidence," we disagree and affirm the termination of the mother's parental rights. *See id.* § 232.117(3).

**AFFIRMED.**